**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **SHELBY CHISM, QUATRIEL HOOKER, JAMES SMITH, and JESSE WASHINGTON** | § § § | |
| | § | **Civil Action No. 7:15-cv-65** |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| **ARC PRESSURE DATA, INC.** | § § | |
| **Defendant** | § | |

**PLAINTIFFS' APPLICATION FOR AWARD OF ATTORNEY'S FEES, COSTS AND EXPENSES**

Plaintiffs Shelby Chism, Quatriel Hooker, James Smith, Jesse Washington and Leroy Stitt ("Plaintiffs") file their Application for Award of Attorney's Fees, Costs and Expenses ("Application"), and in support thereof would show the following:

**BACKGROUND**

1. This Application for Fees and Expenses is being filed as a result of an agreement between the parties reached at the May 11, 2016 mediation of this matter. At mediation, the parties resolved the Plaintiffs' underlying damage claims, but were unable to agree on fees. As a result, the parties agreed to let this Court determine the appropriateness of Plaintiffs' fees and costs.

2. On May 13, 2015, Plaintiffs Shelby Chism, Quatriel Hooker, James Smith and Jesse Washington sued Defendant Arc Pressure Data, Inc. ("Arc") under the Fair Labor Standards Act ("FLSA") for unpaid overtime wages. On September 30, 2015, Plaintiff Leroy Stitt was added to the lawsuit, over the objection of Defendant.

3. Arc provides services to oil and gas operators engaged in hydraulic fracturing, or fracking. Plaintiffs were employed by Arc as flowback operators. Their primary duties involved monitoring and regulating the pumps, gauges, and valves used to control movement of fluid in and out of gas wells. As flowback operators, Plaintiffs routinely worked more than forty (40) hours per week. Despite the fact that Plaintiffs were clearly non-exempt employees, Arc neither tracked Plaintiffs' time nor did it pay Plaintiffs overtime compensation until February 1, 2014. On that date, Arc changed Plaintiffs' compensation from salary to hourly, and began paying those Plaintiffs who were still employed at Arc overtime. This coincided with the DOL's overtime investigation into Arc, an investigation in which Arc was found to owe $45,570.66 in back wages.

4. On September 3, 2015, Plaintiffs' counsel, in an attempt to reach an early resolution of this matter, forwarded a settlement demand to Defendant. *See* September 3, 2015 letter from Doug Welmaker to Sonja McGill, attached hereto as Exhibit A. At this point, fees and costs were $9,147.00. *Id.* On September 11, 2015, Defense counsel responded via letter, stating that "significant settlement discussions are premature" and that "[m]aybe the Parties can engage in a more robust discussion regarding settlement *after the discovery process is well under way*." *See* Exhibit B (emphasis added). Notably, Defendant made no counteroffer. *Id.*

5. While Defendant did make a Rule 68 offer of judgment for $4,955.47 some five months later on February 29, 2016, it should be noted this figure was the exact amount the DOL previously found Plaintiff Quatriel Hooker to have been owed during its investigation of Defendant. *See* Exhibit C, DOL's Summary of Unpaid Wages owed to Plaintiff Hooker. Importantly, this Offer of Judgment also stated that it was inclusive of all fees and costs, a full ten months after litigation commenced. *See* Exhibit D, Offer of Judgment.

6. As a result of Defendant's refusal to consider settlement until discovery was well under way, discovery ensued. During the course of discovery, Defendant produced approximately twenty thousand pages of time and pay records for plaintiffs, the majority of which were spreadsheets, which contained hundreds, if not thousands, of non-consecutive duplicates.

7. Additionally, Plaintiffs' discovery requests were resisted at every turn, resulting in multiple motions to compel, multiple letters sent prior to filing the motions to compel, as well as a motion for contempt. This is a case which should have been settled as soon as it was filed. Instead, it was needlessly prolonged by Defendant's wholesale resistance to even the most basic discovery requests. The timeline below lists some, but not all, of the discovery issues that plagued this case.

8. On September 16, 2015, all Plaintiffs except for Stitt served their First Set of Interrogatories, Requests for Production and Requests for Admission on Defendant.

9. On November 2, 2015, Defendant answered Plaintiffs' First Set of Interrogatories, Requests for Production and Requests for Admission.

10. On November 20, 2015, Plaintiffs' counsel sent a nine-page letter to Defendant detailing Defendant's discovery deficiencies. A true and correct copy of that letter is attached hereto as Exhibit E.

11. On December 4, 2015, after a phone consultation with Defense counsel, Plaintiffs' counsel sent a letter to Defense counsel summarizing the revisions to its discovery responses Defendant agreed to take to address discovery deficiencies. A true and correct copy of that letter is attached hereto as Exhibit F.

12. On December 10, 2015, Plaintiff Leroy Stitt served his First Interrogatories, Requests for Production and Requests for Admission on Defendant.

13. On December 11, 2015, Plaintiffs James Smith, Quatriel Hooker, Jesse Washington and Shelby Chism served their Second Set of Interrogatories on Defendant.

14. On December 28, 2015, Plaintiffs' counsel emailed Defense counsel asking when revised discovery responses would be produced pursuant to the December 4, 2015 letter. Defense counsel responded that same day that the delay has been caused, in part, by the Christmas holiday.

15. On January 8, 2016, Plaintiffs' counsel emailed Defense counsel again, asking when revised discovery responses would be produced pursuant to the December 4, 2015 letter.

16. On January 12, 2016, Defendant answered Leroy Stitt's First Interrogatories, Requests for Production and Requests for Admission.

17. On January 13, 2016, Defendant answered Plaintiffs' James Smith, Quatriel Hooker, Jesse Washington and Shelby Chism's Second Set of Interrogatories.

18. On January 29, 2016, after seeing that Defendant was not going to abide by the December 4, 2015 letter, and after reviewing the deficient discovery responses provided on January 12 and 13, 2016 by Defendant, Plaintiffs filed their First Motion to Compel. [Dkt. 17].

19. On February 9, 2016, Defendant entered into a letter agreement with Plaintiffs in exchange for Plaintiffs withdrawing their Motion to Compel, promising supplemental interrogatory answers and document production by February 19, 2016. Defendant also promised that it would produce "any other pending supplemental information." Exhibit G.

20. On February 29, 2016, Plaintiffs' counsel sent a thirteen-page letter to Defense counsel setting out in detail how Defendant's supplemented discovery provided nothing more

than what had previously been provided, and informing Defense counsel that yet another Motion to Compel would be filed Friday, March 4, 2016. Exhibit H.

21. On March 3, 2016, Plaintiffs' counsel sent Defense Counsel a two-page letter detailing the fact that out of a recent production of 2400 pages of documents, only five pages were relevant, with these five pages showing only that Plaintiff James Smith worked on April 15, 16, 17 18 and 19, 2014. The rest of the documents produced were simply different versions of the same documents, or documents that had nothing to do with any of the remaining Plaintiffs. Exhibit I.

22. On March 4, 2016, after the parties were unable to resolve their differences, Plaintiffs filed their First Amended Motion to Compel [Dkt. 22].

23. On March 29, 2016, Magistrate David Counts granted almost all relief Plaintiffs sought in Plaintiffs' Motion to Compel, and gave Defendant until April 28, 2016 to provide responsive discovery answers and documents. [Dkt. 28].

24. On April 11, 2016, Plaintiffs' counsel sent Defense counsel an eight-page letter, detailing deficiencies in Defendant's Objections and Responses to Plaintiffs' Second Request for Production of Documents (these discovery responses were not addressed in Plaintiffs' First Amended Motion to Compel). Exhibit J. In that letter, Plaintiffs' counsel also noted that Defendant had refused to make a serious offer to settle this case, and that fees were needlessly increasing in a case that should have settled in September of 2015. *Id.*

25. On April 28, 2016, Defendant provided supplemental discovery responses to Plaintiffs, but failed to comply with Magistrate Counts' March 29, 2016 Order.

26. On May 3, 2016, in an attempt to resolve the issues presented in Defendant's deficient supplemental discovery responses, Plaintiffs' counsel sent counsel for Defendant a

letter detailing all issues Plaintiffs' counsel had with Defendant's supplemental discovery responses, and explaining how they failed to comply with the Magistrate's Order. Exhibit K. Defendant failed to respond to that letter.

27. On May 6, 2016, Plaintiffs filed a Motion for Contempt. [Dkt. 34].

28. On May 10, 2016, the parties settled the underlying damages portion of this lawsuit at mediation. As part of the mediation, the parties agreed to have this Court determine the total amount of fees and costs to which Plaintiffs are entitled.

29. The reasonable fee that Plaintiffs request is the lodestar amount, $85,580.00. This is based on an hourly rate of $400.00 for Douglas Welmaker ("Welmaker"); $400 for David Langenfeld ("Langenfeld") (Welmaker took the case over from Langenfeld after Langenfeld left the firm) $300.00 for Benjamin Michael ("Michael") and Bo Jones ("Jones"), and $250 for Chris Jeansonne ("Jeansonne"). The lodestar is the product of well-documented billing judgment. Plaintiffs arrived at the lodestar after making voluntary reductions in hourly rates and after making voluntary itemized reductions for unproductive, excessive or redundant work.

## LEGAL OVERVIEW

30. A Plaintiff is a prevailing party for purposes of an FLSA fee award if he obtains at least some relief on the merits of his claim. *Tyler v. Union Oil Co. of Calif.*, 304 F3d 379, 404 (5th Cir. 2002). An award of attorney's fees to a prevailing Plaintiff is mandatory in an FLSA case: a court "shall, in addition to any judgment awarded to the plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant...." *See* 29 U.S.C. § 216(b); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985). Attorney's fees award under the FLSA are governed by the lodestar method, and are determined by the trial court, not the jury. *Saizan v. Delta Concrete Prods., Co.,* 448 F.3d 795, 799 (5th Cir. 2006).

31. Under the *lodestar* method, a court first determines the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995). Then, the Court must determine a lodestar by multiplying the reasonable hours by the reasonable hourly rates. *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 888, 104 S. Ct. 1541 (1984)).

32. After calculating the lodestar, the court may adjust the lodestar amount upward or downward based upon its analysis of twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974). The twelve *Johnson* factors are:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717–19.

33. The Fifth Circuit and the Supreme Court emphasize that there is a "strong presumption" that the lodestar amount is reasonable. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (citing *Perdue v. U.S. ex. rel. Kenny A.*, 559 U.S. 542, 552, 130 S.Ct. 1662 (2010)). The lodestar "should only be modified in exceptional cases." *Watkins v. Forcid*, 7 F3d 453,457 (5th Cir. 1993).

34. Fee applicants bear the burden of establishing the appropriate hours and hourly rates and proving they exercised billing judgment. *Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir. 2002); *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996). Billing judgment requires documentation of the hours charged and of hours not charged because they were unproductive, excessive, or redundant. *Saizan v. Delta Concrete Products Co.*, 448

F.3d 759, 799 (5th Cir. 2006). The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment. *Id.*; *Walker*, 313 F.3d at 251.

35. A fee applicant can only meet his burden by presenting evidence that is adequate for a court to determine what hours should be included in the reimbursement. *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990). Thus, courts generally require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours. *Id*. If the documentation is vague or incomplete, a court may reduce the hours. *Kellstrom*, 50 F.3d at 324.

36. Reasonable hourly rates are determined by looking to the prevailing market rates in the community in which the district court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

37. "[A]ttorney fees are an integral part of the merits of FLSA cases," *Shelton v. MP. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987), and, as courts repeatedly explain, the ability of FLSA Plaintiffs to recover a reasonable attorney's fee is crucial to the statute's enforcement scheme. *See, e.g., Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (the "purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process" and "an award... 'encourages the vindication of congressionally identified policies and rights'"); *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co*., 732 F.2d 495, 502 (6th Cir. 1984) (FLSA attorney's fee analysis "must reflect the obvious congressional intent that the policies enunciated in FLSA Section 2 be vindicated, at least in part, through private lawsuits"); *Maddrix v. Dize*, 153 F.2d 274, 275-76 (4th Cir. 1946) ("Obviously Congress intended that the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or

costs"); *Estrella v. P.R. Painting Corp*., 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) (FLSA fee-shifting provision is "designed in part to secure legal representation for Plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements"); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 952 (E.D. Wis. 2003) (FLSA's fee-shifting provision "exists to enable Plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail and, thereby, to help ensure enforcement of the substantive provisions of the FLSA").

38. Consistent with the above principles, it is commonplace for FLSA attorney's fee awards to greatly exceed the amount of the plaintiff's recovered unpaid wages. *See, e.g., Howe v. Hoffman-Curtis Partners Ltd, LLP*, 215 Fed. Appx. 341 (5th Cir. 2007) (finding that "[g]iven the nature of claims under the FLSA, it is not uncommon that attorney fee requests can exceed the amount of judgment in the case by many multiples" and granting attorneys' fees of $129,805.50 with damages of $23,357.30); *Willis v. Full Service Construction, Inc.*, [Dkt. 77], CA 4:14-cv-01673, S.D. Tex. 2016 (Hoyt) ($6,686.20 in damages and $99,291.75 in fees); *Lucio-Contu v. Vela*, 239 Fed. Appx. 866 (5th Cir. 2007) ($3,349.29, $1,296.00, and $52.50 in damages for three Plaintiffs and $51,750.00 in attorneys' fees); *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir. 1990) ($1,698.00 in damages and $9,250 in attorney's fees); *Albers v. Tri-State Implement, Inc.*, 2010 U.S. Dist. LEXIS 23450, *66-86 (D.S.D. Mar. 12, 2010) ($2,137.97 in damages and $43,797.00 in fees); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 962 (E.D. Wis. 2003) ($3,540.00 in damages and $36,204.88 in fees); *Roussel v. Brinker International, Inc.*, 2010 WL 1881898 (S.D. Tex. 2010) (awarding attorney fee recovery of approximately $1,600,000.00 on recovery of approximately $200,000.00 for Plaintiffs)*; Howe v. Hoffman-Plaintiffs Partners, Ltd., LLP*, 215 Fed App'x 341, 342 (5th Circ. 2007) (affirming $125,805 in

attorneys' fees where the plaintiff recovered $23,357 in damages); *Hilton v. Executive Self Storage Associates, Inc.*, CA 4:06-cv-02744, 2009 WL 1750121, at *16 (S.D. Tex. June 18, 2009) (awarding $21,132.05 in fees on damages of $2,000.00 in an FLSA case); *Villegas v Regions Bank*, CA 4:11-cv-00904 (S.D. Texas 2013, Dkt 27) (awarding $13,230.00 in fees on damages of $1,413.00 in FLSA case); *Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991, at *4 (N.D. Tex. July 17, 2014) (on remand from the Fifth Circuit, awarding $232,400.81 in fees on $23,747.56 in damages in FLSA case).

39. Indeed, if statutory fees under the FLSA were limited by the plaintiff's recovery, the vast majority of FLSA violations in this nation would go unvindicated because workers simply would be unable to find private lawyers to take their cases on an individual basis. *See Heder*, 255 F. Supp. 2d at 952.

## ANALYSIS

40. Based on the lodestar analysis, Plaintiffs seek $85,580.00 in attorneys' fees. This amount is supported by: (a) an analysis of the reasonable hours spent working on this case; and (b) the reasonable hourly rates. These factors, and the *Johnson* factors, are discussed below, and are supported by a sworn declaration from Douglas B. Welmaker (attached hereto as Exhibit L), a sworn declaration from Jeremi Young (attached hereto as Exhibit M), as well as contemporaneous time records (Attachment 1 to Exhibit L). The breakdown in time was as follows: Doug Welmaker: 149.1 hours at $400 for $59,640.00; David Langenfeld: 4.9 hours at $400.00, for $1,960.00; Chris Jeansonne: 19 hours at $250, for $4,750.00; Bo Jones: 51 hours at $300, for $15,300.00; and Ben Michael: 13.1 hours at $300, for $3,930.00. By agreement of the parties, to preserve the confidentiality of the settlement terms, the amount Plaintiffs received as a result of the settlement is confidential, but if the amount of the settlement becomes an issue, counsel for Plaintiffs is able and willing to discuss the specific terms of the settlement as well as

all economic factors that led to the settlement in open court at the hearing of this matter scheduled for August 10, 2016.

Hours of Work Are Reasonable

41. Plaintiffs seek an award based on 154 hours of senior associate time and 83.1 hours of associate time in this case. Dunham & Jones, P.C. tracks its time through a software program called Salesforce. *See* Welmaker Declaration, attached hereto as Exhibit L. A report reflecting much more than the 237.1 hours of work sought herein is attached as Attachment 1 to Exhibit L. It is chronologically organized. It accurately reflects that Douglas B. Welmaker and Bo Jones billed most of the billable time to this case. In his Declaration, Welmaker describes the work performed, time charged and the reasonableness and necessity of such work and charges. Exhibit L.

Counsel Exercised Billing Judgment

42. Welmaker showed billing judgment in two separate ways. First, he reduced the hourly rates of Ben Michael and Bo Jones from from $325 to $300 an hour, and he reduced Chris Jeansonne's rate from $325 to $250 an hour, all of which reduced fees by $3,025.00. Second, he reduced the total fees sought by $9,000.00 for unnecessary or duplicative tasks. Attachment 1 to Exhibit L. These time entries that were written off or reduced are reflected in the column entitled "Hours Reduced" on the attached report. Total reduction in fees was therefore $12,025.00. Exhibit L.

The Hourly Rates Upon Which Plaintiffs Base their Award is Reasonable

43. Douglas B. Welmaker's hourly rate of $400.00 is reasonable. Welmaker has practiced labor and employment since 1993, and regularly represents Plaintiffs in FLSA cases in Federal District Court. Courts in both the the Western District of Texas (*Meesook v. Grey Canyon Family Medicine, PA, et al,* 2014 WL 5040133 (W.D. Tex. 2014)), the Northern District

of Texas (*Mauricio v. Phillip Galyen, P.C.*, No. 3:14-CV-64-L, --F.Supp. 3d --, 2016 WL 1273337, 2016 Wage & Hour Cas.2d (BNA) 99,007 (N.D. Tex. Mar. 30, 2016) and *Henderson v. Fenwick Protective Inc.*, No. 3:14-CV-505-M-BN, 2015 WL 9582755 (N.D. Tex. Nov. 23, 2015), *report and recommendation adopted,* No. 3:14-CV-505-M, 2015 WL 9582147 (N.D. Tex. Dec. 28, 2015)) and the Southern District of Texas (*Willis v. Full Service Construction, Inc.*, [Dkt. 77], CA 4:14-cv-01673, (S.D. Tex. 2016)) have found his hourly rate of $400 an hour to be reasonable. His hourly rate of $400 has also been found reasonable by Arbitrator Brian Harvey in an AAA FLSA arbitration litigated in Washington D.C., *Kim Curtis v. Convergenz, LLC*, AAA Case No. 01-14-0000-7497, award dated December 10, 2015. Welmaker's resume reflecting more details of his education and experience is attached hereto as Attachment 2 to Exhibit L. Additionally, Jeremi K. Young's Declaration supporting Welmaker's hourly rate as well as the total amount sought in this Fee Application is attached hereto as Exhibit M.

44. David G. Langenfeld's rate of $400 an hour is likewise reasonable. Mr. Langenfeld is Board Certified in Labor and Employment law, and has been litigating labor and employment lawsuits in state and federal courts in Texas since 1994. Mr. Langenfeld's billing rate of $400.00 an hour has been approved in the Northern District in *Mauricio v. Phillip Galyen, P.C.*, No. 3:14-CV-64-L, --F.Supp. 3d --, 2016 WL 1273337, 2016 Wage & Hour Cas.2d (BNA) 99,007 (N.D. Tex. Mar. 30, 2016) and in *Robinson v. Nexion Health at Terrell, Inc.*, CA 3:12-cv-03853, N. D. Tex., Dkt. 56, Feb. 11, 2015. Langenfeld's resume reflecting more details of his education and experience is attached hereto as Attachment 3 to Exhibit L.

45. Mr. Michael's rate of $300 an hour is also reasonable. In *Henderson v. Fenwick Protective Services, Inc., et al*, No. 3:14-cv-505 (N.D.Tex. November 23, 2015, Dkt. 56, affirmed by the District Court on December 28, 2015, Dkt. 58) Mr. Michael's then-billable rate

of $250 an hour was found to be reasonable by the Magistrate, an opinion that was subsequently affirmed by the District Court. Additionally, in *Willis v. Full Service Construction, Inc.*, [Dkt. 77], CA 4:14-cv-01673, (S.D. Tex. 2016), the District Court also found Mr. Michael's then-billable rate of $250 an hour was reasonable. Mr. Michael's resume is attached hereto as Attachment 4 to Exhibit L. Ms. Jones' rate of $300 an hour is also reasonable. She has been practicing law for 20 years, was named a Texas Rising Star in 2006, and her lower billable rate made her an ideal choice to review, analyze and organize the 20,000 documents produced by Defendant in this matter. Ms. Jones' resume is attached hereto as Attachment 5 to Exhibit L. Finally, Mr. Jeansonne's rate of $250 an hour is reasonable for an attorney who has been practicing for more than five years. Mr. Jeansonne's resume is attached hereto as Attachment 6 to Exhibit L.

46. Jeremi Young's Declaration supporting the hourly rates charged by Welmaker, Langenfeld, Michael, Jones and Jeansonne provides additional evidence that that the hourly rates sought by Plaintiffs' counsel are reasonable and customary within the Western District of Texas, Midland-Odessa Division. *See* Exhibit M.

47. The requested rates are in-line with those awarded in similar FLSA litigation cases in this District. *See, e.g., Meesook v. Grey Canyon Family Medicine, PA, et al,* No. 5:13-cv-729*,* 2014 WL 5040133 (W.D. Tex. 2014) (Judge Xavier Rodriguez awarding Doug Welmaker $400 an hour in FLSA case); *Clark v. Centene Corp*., No. 1:12-cv-00174, 2015 WL 6962894 (W.D. Tex. 2015), [Doc. 180] (Judge Sam Sparks awarding Rachhana Srey and Paul Lukas $425 an hour in FLSA case).

Johnson Factors Do Not Justify an Adjustment of Fees

48. Plaintiffs do not seek an upward adjustment to the lodestar amount of $85,580.00 based on the *Johnson* factors. Additionally, Plaintiffs oppose any reduction in fees.

49. The *Johnson* factors are applied below:

A. The time and labor required for the litigation: See above.

B. The novelty and difficulty of the questions presented: The case presented no novel or difficult questions.

C. The skill required to perform the legal services properly: Average skill was required.

D. The preclusion of other employment by the attorney due to acceptance of the case: Not applicable.

E. The customary fee: See above. Additionally, this matter was handled on a pure contingent fee basis, which is customary, although many firms charge clients their costs, or some other small retainer, neither of which Dunham & Jones, P.C. did in this case.

F. Whether the fee is fixed or contingent: Dunham & Jones, P.C. took this case on a pure contingent fee basis. Accordingly, the firm has, as of this day, not made a penny on this case, and has not charged Plaintiffs a single penny either.

G. Time limitations imposed by the client or the circumstances: Not applicable.

H. The amount involved and the result obtained: Because of the confidential terms of the settlement agreement, damages obtained for Plaintiffs at the mediation of this case will be discussed at the hearing of this matter in open court rather than in this pleading.

I. The experience, reputation and ability of the attorneys: Mr. Welmaker, the lead attorney on this matter, has twenty-three years' experience, with good reputation and ability.

J. The "undesirability" of the case: Not applicable.

K. The nature and length of the professional relationship with the client: Dunham & Jones, P.C. began relationship in February 2015.

L. Awards in similar cases: The proposed attorneys' fees award of $85,580.00 would appear to be standard, compared to other similar cases that were tried in the Texas recently. *See Meesook v. Grey Canyon Family Medicine,*

> *PA, et al,* No. 5:13-cv-729*,* 2014 WL 5040133 (W.D. Tex. 2014) (fees of $40,518.50 awarded on damages of $24,936.30); *Clark v. Centene Corp*., No. 1:12-cv-00174, 2015 WL 6962894 (W.D. Tex. 2015), [Doc. 180] (Fees of $659,254.87 awarded on damages of $242,496.98); W*herley v. John Schellsmidt et al*, 3:12-cv-0242-D, Dkt. 89, 2014 WL 3513028 (N.D. Tex. 2014) (Hon. Sidney Fitzwater awarded $71,695.00 in fees on a recovery of $16,138.00). *See also Howe v. Hoffman-Plaintiffs Partners, Ltd., LLP*, 215 Fed App'x 341, 342 (5th Circ. 2007) (affirming $125,805 in attorneys' fees where the plaintiff recovered $23,357 in damages), *Villegas v Regions Bank*, CA 4-11-cv-904, S.D. Tex. 2013, Dkt 27 (awarding $13,230.00 in fees on damages of $1,413.00); *Hilton v. Executive Self Storage Associates, Inc.*, No. CIV.A. H-06-2744, 2009 WL 1750121, at *16 (S.D. Tex. June 18, 2009) (awarding $21,132.05 in fees on damages of $2,000.00 in an FLSA case); *Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991, at *4 (N.D. Tex. July 17, 2014) (awarding $232,400.81 in fees on $23,747.56 in damages.

49. Federal Rule of Civil Procedure 54(d)(1) provides for an award of costs "to the prevailing party unless the court otherwise directs." FED. R. CIV. P. 54(d)(1). Furthermore, the Fifth Circuit strongly presumes that courts will award costs to the prevailing party. *Salley v. E.I. DuPont de Nemours & Co*., 966 F.2d 1011, 1017 (5th Cir. 1992) (citing *Sheets v. Yamaha Motors Corp. USA*, 891 F.2d 533, 539 (5th Cir. 1990)). Further, courts have generally held that cost awards under fee-shifting statutes may encompass all reasonable out-of-pocket expenses. *Shorter v. Valley Bank & Trust Co*., 678 F.Supp. 1518, 1523, 30 WH Cases 334 (D. Kansas 1991); *Walton v. United Consumers Club*, 786 F.2d 303, 316, 27 WH Cases 962 (7th Cir. 1986).

50. Texas District Courts have determined that costs are appropriately awarded to prevailing parties in FLSA cases as part of a reasonable fee. "Reimbursement for travel, meals, lodging, photocopying, long distance phone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning and visual equipment are the types of litigation expenses that are recoverable under the FLSA as part of an attorneys' fee award. *Hilton v. Executive Self Storage Associates, Inc.*, 2009 WL 1750121, at *16 (S.D. Tex. June 18, 2009) (citing *Quintanilla v. A&R Demolition, Inc*., 2007 WL 5166849, at *9 (S.D. Tex. May 7, 2007)).

51. Before a court taxes a bill of costs, the party claiming the cost shall attach an affidavit that such amount is correct, was necessarily incurred during the case, and the services which gave rise to the cost were actually and necessarily performed. 28 U.S.C. § 1924 (2006). If a party does not set out costs with sufficient particularity, a court may disallow them. *See Davis v. Commercial Union Ins. Co.*, 892 F.2d 378, 385 (5th Cir. 1990).

52. In this case, Plaintiffs seek costs of $3,941.58 for the following:

A. Filing fee: $400.00;

B. Service of process: $100.00;

C. Secretary of State Research: $1.00;

D. Dallas airfare (mediation): $799.92;

E. Hotel (mediation): $338.40;

F. Uber (cab) receipts of $10.45, $20.42 and $11.94 (mediation);

G. Mediation fee: $1,500.00;

H. Airport parking: $21.00;

I. Court reporter cancellation fee: $220.15 (mediation ran too late to cancel depositions scheduled for the next day without a cancellation fee);

J. Fee for Deposition on Written Questions for Bell Nunnally and Jackson Walker: $518.30.

53. A copy of Plaintiffs' Bill of Costs is attached to Exhibit L as Attachment 7. Included within this Attachment are all invoices supporting Plaintiffs' Bill of Costs. An addendum supporting additional costs is attached hereto as Attachment 8.

## CONCLUSION

This is a case that should have been settled at the outset of this litigation. In order to prevent this case from being driven by fees, Plaintiffs' counsel attempted to settle this matter

early on in the litigation, but Defendant was simply not willing to even engage in settlement discussions until this matter was mediated, over nine months after Plaintiffs originally attempted to discuss settlement. Moreover, Defendant's scorched earth approach to discovery was the primary driver behind fees in this case, as can be seen by Plaintiffs' fee statement.

Plaintiffs respectfully move the Court to enter an order awarding Plaintiffs reasonable and necessary attorney's fees of $85,580.00 as well as recoverable costs and expenses of $3,941.58 for a total award of $89,521.58.

Additionally, Plaintiffs seek $3,200.00 in anticipated fees and $500.00 in anticipated expenses for time and costs expected to be incurred traveling to, preparing for, participating in, and traveling from the August 10, 2016 hearing scheduled in this matter. Total fees and costs sought therefore are $92,721.58.

Plaintiffs also seek all other relief to which they are justly entitled, as determined by this Honorable Court.

Respectfully submitted,

By: /s/ Douglas B. Welmaker
Douglas B. Welmaker
State Bar No. 00788641
DUNHAM & JONES, P.C.
1800 Guadalupe Street
Austin, TX 78701
Tel.: (512) 777-7777
Fax: (512) 340-4051
E-mail: doug@dunhamlaw.com

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

I hereby certify that the foregoing Application for Attorney's Fees and Costs has been electronically served on all counsel of record via Notice of Electronic Filing on a known Filing User through the CM/ECF system on July 28, 2016.

/s/ Douglas B. Welmaker
Douglas B. Welmaker